Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,961-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RONALD MARK LELEAUX, III                    Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021CR269

Honorable Bernard Scott Leehy, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Chad M. Ikerd

ROBERT STEPHEN TEW                       Counsel for Appellee
District Attorney

HOLLY A. CHAMBERS-JONES
Assistant District Attorney

* * * * *

Before PITMAN, ROBINSON, and MARCOTTE, JJ.

MARCOTTE, J.

This criminal appeal arises from the Fourth Judicial District Court, Parish of Ouachita, the Honorable B. Scott Leehy presiding. Defendant, Ronald Mark Leleaux, was convicted of second degree battery, violation of a protective order with battery, domestic abuse battery, and false imprisonment. Leleaux was adjudicated a second-felony habitual offender and sentenced to 16 years at hard labor for the second degree battery conviction. He was also sentenced to 4 years at hard labor for the violation of a protective order with battery conviction, 6 months for the domestic abuse battery conviction, and 6 months for the false imprisonment conviction. All sentences were ordered to run concurrently with one another. Leleaux now appeals, arguing that there was insufficient evidence to convict him of false imprisonment and that the trial court erred by failing to advise him of key rights in his habitual offender hearing. For the following reasons, we affirm defendant's four convictions, his adjudication as a second-felony offender, and his sentence for false imprisonment. We affirm the terms of imprisonment for his felony conviction as a habitual offender for second-degree battery, his felony conviction for violation of a protective order, and his conviction for domestic abuse battery. However, we vacate the part of his sentences for his two felony convictions restricting the benefit of parole. We also vacate the part of his sentence for domestic abuse battery which imposed a $350 fine and remand the case for a hearing to determine defendant's financial hardship regarding payment of a fine.

**FACTS**

On January 14, 2021, Cathy Thompson ("Ms. Thompson") let Leleaux in her house because she felt sorry for him. The two had an

intermittent romantic relationship and he told her that he was homeless at the time. After three days, Leleaux began to drink heavily, and he and Ms. Thompson got into an argument. The argument escalated and resulted in Leleaux pushing her to the ground and punching her body and face, fracturing her ribs and puncturing a lung in the process. Leleaux also strangled Ms. Thompson and told her that he was going to kill her. Ms. Thompson eventually broke free and barricaded herself in her room all night while Leleaux lurked outside the house, yelling and screaming at her.

On April 24, 2023, Leleaux was charged by an amended bill of information with four counts: (1) second degree battery, in violation of La. R.S. 14:34.1; (2) violation of protective order with battery, in violation of La. R.S. 14:79; (3) domestic abuse battery by strangulation, in violation of La. R.S. 14:35.3(L); and (4) false imprisonment, in violation of La. R.S. 14:46. All crimes were alleged to have occurred on January 17, 2021. Leleaux pled not guilty. Following the empaneling of a 12-member jury, a trial was held for counts 1-3 on April 24-26, 2023, while the trial court was the fact-finder for count 4. The following evidence was adduced at trial.

Ms. Thompson testified that she met Leleaux in 2019 through her granddaughter, who was married to his brother. Leleaux was half her age. At first, Leleaux was sweet to her and comforted her in a difficult time in her life after her husband of ten years committed suicide. Their relationship eventually evolved into a romantic one. He gained her trust. After feeling "numb" for a long time after her husband's death, Ms. Thompson testified that she "felt something" again when she was with Leleaux, even if the "something" that she felt was her getting upset with him. They argued a lot. Ultimately, their arguments escalated to the point where Leleaux was

2

physically abusive toward her. This created an unhealthy cycle of abuse and forgiveness. After instances where Leleaux was physically abusive, Ms. Thompson repeatedly called the police, and Leleaux was arrested for domestic violence and a restraining order was issued. This happened in July 2019, January 2020, and February 2020.

Ms. Thompson would, nevertheless, talk to him on the phone while he was in jail, put money on his prison account, and even bond him out of jail. She "wanted to fix him." Ms. Thompson even changed the protective order to loosen some of the restrictions, although the protective order still prohibited Leleaux from abusing, stalking, harassing, following, or threatening her.

Around January 14, 2021, Leleaux showed up at her residence stating that he was homeless. Ms. Thompson testified that she knew there was a protective order in place, but felt sorry for Leleaux so she let him in. After three days, Leleaux began drinking heavily and the physical abuse resumed. This time he pushed her to the ground, straddled her and began violently punching her in the ribs, arms, and facial areas. Ms. Thompson stated that while attempting to fight Leleaux off she grabbed a coffee mug and hit him with it. Leleaux then wrested control of the mug and struck her on the lip with it.

Ms. Thompson testified that Leleaux then grabbed her throat with his right hand and began strangling her while screaming, "I will kill you." Ms. Thompson testified that she was sure Leleaux was going to kill her this time. After she was struggling to breathe, Leleaux finally stopped and stood over her before exiting the house. Ms. Thompson then locked all the doors to the

3

house and barricaded herself in her bedroom using furniture. She did not have her phone, however, as Leleaux had taken that with him.

Ms. Thompson stated that Leleaux then began beating on the doors and windows, repeatedly screaming that he would kill her. Leleaux stayed outside of her window for the majority of the night yelling and screaming at her. Ms. Thompson stated that she legitimately feared for her life and could not leave due to the threat Leleaux posed outside her window.

When morning came, Leleaux finally left. Ms. Thompson said that she then called her granddaughter and daughter with an old phone she found in her bedroom. Her daughter arrived and took her immediately to the hospital, where she stayed for five days. Ms. Thompson was treated for various injuries, including multiple bruises, scratches, four broken ribs, and a collapsed lung. Ms. Thompson was shown various photographs of the bruises and scratches on her body and confirmed that they were from the incident in question.

Deputy Jessica Oliveaux ("Dep. Oliveaux") from the Ouachita Parish Sheriff's Office also testified. Dep. Oliveaux stated that on January 18, 2021, she was called to Glenwood Regional Medical Center after the nursing staff there reported a domestic incident. Dep. Oliveaux spoke to Ms. Thompson, who described in detail the violence inflicted upon her by Leleaux. Dep. Oliveaux was also able to observe Ms. Thompson's injuries and took photographs of them. After Dep. Oliveaux spoke to the attending physician regarding the severity of Ms. Thompson's injuries, she located Leleaux and arrested him.

The state rested. Leleaux chose not to testify on his own behalf and the defense rested.

4

A unanimous 12-person jury found Leleaux guilty on the charges of second-degree battery and violation of a protective order with battery. For the charge of domestic abuse battery by strangulation, the jury found Leleaux guilty of the lesser included misdemeanor of domestic abuse battery. The trial court found Leleaux guilty of false imprisonment.

The state filed a habitual offender bill of information on June 28, 2023, alleging that Leleaux was a second felony offender. The predicate conviction was from Ouachita Parish. On February 22, 2012, Leleaux pled guilty to a charge of felony carnal knowledge of a juvenile that was committed on May 22, 2011. He received a five-year hard labor sentence, which was reduced to three years at hard labor on March 26, 2012, after a motion to reconsider was filed.

A habitual offender hearing was held on June 29, 2023. The trial court read the charge aloud then asked Leleaux if the allegations were true and whether he admitted or denied the charge. Leleaux stated that the conviction was true, but he denied the allegations. The trial court accepted the answer as a denial of the habitual offender charge. The trial court then granted the state's motion to continue the habitual offender hearing because the presentence investigation report was just filed.

On August 15, 2023, the parties returned, and the trial court adjudicated Leleaux a second-felony habitual offender based on his stipulation that he was convicted in 2012 of felony carnal knowledge of a juvenile and 10 years had not elapsed since he served his sentence for that crime. The trial court then sentenced Leleaux under the habitual offender bill to 16 years at hard labor for the second-degree battery conviction.

For Leleaux's other convictions, the trial court sentenced him to four years at hard labor for violation of a protective order with battery, six months for domestic abuse battery, and six months for false imprisonment. For the two felony convictions of second degree battery and violation of a protective order with battery, the trial court ordered that the sentences be served without benefit of probation, parole, or suspension of sentence. All sentences were ordered to run concurrently. Without holding a hearing pursuant to La. C. Cr. P. art. 875.1 to assess his ability to pay, the trial court also fined Leleaux $350.

Leleaux appeals.

## DISCUSSION

*False Imprisonment*

Leleaux argues that the state did not provide sufficient evidence to prove he was guilty of false imprisonment. He claims that Ms. Thompson was not imprisoned in her room against her will but, rather, that she voluntarily barricaded herself in her room. Leleaux concedes that it was understandable why Ms. Thompson would not want to leave but claims that ultimately the choice was hers whether to open the door and exit the room. Leleaux asserts that false imprisonment requires the perpetrator to intentionally confine or detain another person without their consent, and that essential element was missing here. Leleaux requests that this court reverse his conviction for false imprisonment due to insufficient evidence.

Appellee argues that the evidence was sufficient to convict Leleaux of false imprisonment. The state contends that even though Ms. Thompson barricaded herself in her room rather than Leleaux erecting the barricades, she was still intentionally confined without her consent due to Leleaux's

menacing presence outside her home preventing her from leaving. The state claims that Ms. Thompson feared for her life and thus could not exit her home without risking it.

The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder. *State v. Ward, supra*; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297. On appeal, a reviewing court must view the evidence in the light most favorable to the prosecution and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. *Jackson, supra*.

Leleaux was charged and convicted of false imprisonment. La. R.S. 14:46(A) defines the crime of false imprisonment as "the intentional confinement or detention of another, without his consent and without proper legal authority." The victim, Ms. Thompson, testified that Leleaux repeatedly struck her in her face and ribs and strangled her such that she was unable to breathe. She stated, "[T]hat day I thought this was it. You know.

It's done.  He's not going to let go.  I know how that happens.  And I didn't think he was going to let go."

Leleaux only released Ms. Thompson after she struck him with a ceramic coffee mug.  Leleaux eventually gained control of the mug and struck Ms. Thompson in the mouth with it.  After Leleaux left the home, Ms. Thompson locked the door and barricaded herself in her bedroom.  Leleaux then spent the entire night banging on her windows and doors, threatening her and demanding to be let back in.  Ms. Thompson feared for her life.

Under these circumstances, the fact that it was Ms. Thompson rather than Leleaux who locked the door and erected the barricades is of little import.  Leleaux had already violently attacked Ms. Thompson and was threatening to do it again.  Had she removed the barricades and unlocked the door, violence was sure to follow.  In this way, she was being intentionally detained against her will by Leleaux.  Accordingly, Leleaux's actions satisfy the definition of false imprisonment under La. R.S. 14:46(A).

We hold that there was sufficient evidence for the trial court to find Leleaux guilty of false imprisonment.  This assignment of error has no merit.

*Habitual Offender Hearing*

Leleaux also argues that the trial court committed reversible error by failing to advise him of his right to remain silent during the habitual offender proceeding.  Leleaux's claim focuses on the second habitual offender hearing on August 15, 2023, after he had denied the habitual offender allegations at the first hearing.  Leleaux asserts that at the second hearing, he should have been advised of his rights during the process, but the trial court, instead, focused on whether Leleaux would stipulate to a prior felony conviction and whether the ten-year cleansing period had elapsed since that

8

conviction. Leleaux claims that because of the trial court's failure to advise him of his rights, he did not know that he could remain silent and force the state to prove a prior felony conviction.

The state argues that whether Leleaux was advised of his rights at the habitual offender hearing is immaterial because such a failure would be considered harmless error when, as here, the defendant's habitual offender status is established by competent evidence offered by the state at the hearing. In support, the state points to the fact that it submitted evidence of Leleaux's prior conviction by introducing certified copies of his conviction in Ouachita Parish in 2012 for carnal knowledge of a juvenile.

La. R.S. 15:529.1(D)(1)(a) requires that the defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the state must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. *State v. Mason*, 37,486 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1077 *citing State v. Bell*, 03-217 (La. App. 5 Cir. 5/28/03), 848 So. 2d 87. In addition, this court has found that the failure to properly advise a defendant of his right to have 15 days in which to object to the habitual offender bill of information constitutes an error on the face of the record. *State v. Taylor*, 53,934 (La. App. 2 Cir. 5/5/21), 321 So. 3d 486.

However, the failure to advise a defendant of his rights is considered harmless error when the defendant's habitual offender status is established by competent evidence offered by the state at the hearing rather than by admission of the defendant. *State v. McKeever*, 55,260 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1156.

9

Leleaux was not advised of his rights, in particular his right to remain silent during the habitual offender hearing and his right to have 15 days to object to the habitual offender bill of information. Nevertheless, we note that competent evidence of Leleaux's status was established when the state admitted into evidence certified copies of his conviction for felony carnal knowledge of a juvenile in 2012. Advising Leleaux of his right to remain silent would not have prohibited the state from introducing these certified copies. As such, the trial court's failure to advise Leleaux of his rights was harmless error.

*Errors Patent*

A review of the record indicates that there is an error patent in the proceedings regarding the trial court's imposition of the $350 fine. La. R.S. 14:35.3(C) authorizes the imposition of a fine of not less than $300 nor more than $1,000 upon conviction of domestic abuse battery. The trial court in the present matter imposed a $350 fine on Leleaux. However, La. C. Cr. P. art. 875.1 states, in pertinent part:

> A. The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his action, to compensate victims for any actual pecuniary loss or costs incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. *Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven.* Creating a payment plan for the offender that is based upon the ability to pay, results in financial obligations that the offender is able to comply with and often results in more money collected. Offenders who are consistent in their payments and in good faith try to fulfill their financial obligations should be rewarded for their efforts.

10

B. For purposes of this Article, "financial obligations" shall include any fine, fee, cost, restitution, or other monetary obligation authorized by this Code or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole.

C. (1) Notwithstanding any provision of law to the contrary, *prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents.* The court may consider, among other factors, whether any victim of the crime has incurred a substantial financial hardship as a result of the criminal act or acts and whether the defendant is employed. The court may delay the hearing to determine substantial financial hardship for a period not to exceed ninety days, in order to permit either party to submit relevant evidence.

(2) *The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.*

D. (1) If the court determines that payment in full of the aggregate amount of all financial obligations imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents, the court shall do either of the following:

(a) Waive all or any portion of the financial obligations, except as provided in Paragraph E of this Article.

(b) Order a payment plan that requires the defendant to make a monthly payment to fulfill the financial obligations.

(2)(a) The amount of each monthly payment for the payment plan ordered pursuant to the provisions of Subsubparagraph (1)(b) of this Paragraph shall be determined by the court after considering all relevant factors, including but not limited to the defendant's average gross daily income for an eight-hour work day.

11

(b) If the court has ordered restitution, half of the defendant's monthly payment shall be distributed toward the defendant's restitution obligation.

(c) Except as provided in Paragraph E of this Article, during any periods of unemployment, homelessness, or other circumstances in which the defendant is unable to make the monthly payment, the court or the defendant's probation and parole officer is authorized to impose a payment alternative, including but not limited to substance abuse treatment, education, job training, or community service.

(3) If, after the initial determination of the defendant's ability to fulfill his financial obligations, the defendant's circumstances and ability to pay his financial obligations change, the state, the defendant, or the defendant's attorney may file a motion with the court to reevaluate the defendant's circumstances and determine, in the same manner as the initial determination, whether a modification of the monthly financial obligation imposed pursuant to this Article is appropriate under the circumstances. (Emphasis added.)

The imposition of a fine within the specified range provided by La. R.S. 14:35.3(C) is mandatory. However, we find that Leleaux was entitled to a hearing pursuant to La. C. Cr. P. art. 875.1 prior to the imposition of the $350 fine. There is no evidence in the record that he or the trial court waived the determination of financial hardship. Because a hearing was not held, we vacate the $350 fine and remand the matter to the trial court for the required hearing.

We note one other error patent. There are two uniform commitment orders in the record. One, dated August 15, 2023, states that the two felony convictions are to be served without all benefits. The other, dated September 8, 2023, states that the two felony convictions are to be served without any restriction of benefits. At the sentencing hearing, the transcript makes clear that the trial court ordered the sentences to be served without benefit of probation, parole, or suspension of sentence.

12

However, the restriction on parole was not mandatory for the two felony sentences. La. R.S. 15:574.4. Accordingly, we order that the hard labor sentences for Leleaux's two felony convictions of second degree battery and violation of a protective order with battery be served with benefit of parole but without the benefits of probation or suspension of sentence.

**CONCLUSION**

For the foregoing reasons, Leleaux's conviction is affirmed. His sentence is affirmed, in part, as to the trial court's sentence of 16 years at hard labor for the second-degree battery conviction, 4 years at hard labor for violation of a protective order with battery, 6 months for domestic abuse battery, and 6 months for false imprisonment, all of which are to run concurrently. However, Leleaux's sentence is vacated, in part, as to the $350 fine imposed without a hearing. Accordingly, we remand this case for a hearing pursuant to La. C. Cr. P. art. 875.1 to determine Leleaux's ability to pay any assessed fine. We also vacate the part of his sentences for his two felony convictions restricting the benefit of parole.

**AFFIRMED IN PART, VACATED IN PART AND REMANDED.**

13